UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

———

ROZMINA A. JAFFER, Ph.D.,

    Plaintiff,

vs.

MICHIGAN STATE UNIVERSITY,
MICHIGAN STATE UNIVERSITY
BOARD OF TRUSTEES, and
KENT D. MILLER, Ph.D., in his
individual capacity, *severally and individually*,

    Defendants.

Case No.
Hon.

_____/
Brian J. Farrar (P79404)
STERLING ATTORNEYS AT LAW, P.C.
Attorneys for Plaintiff
33 Bloomfield Hills Pkwy., Ste. 250
Bloomfield Hills, MI 48304
(248) 644-1500
bfarrar@sterlingattorneys.com
_____/

## COMPLAINT AND JURY DEMAND

Plaintiff Rozmina A. Jaffer, Ph.D., by her attorneys, Sterling Attorneys at Law, P.C., for her Complaint and Jury Demand against defendants submits the following:

### JURISDICTIONAL ALLEGATIONS

1. Plaintiff is an individual residing in Haslett, Michigan.

2. Defendant Michigan State University ("MSU") is a public research university located in East Lansing, Michigan, and has an enrollment of approximately 50,000 undergraduate and graduate students.

3. Defendant Michigan State University's Board of Trustees ("Trustees") is the governing body of defendant MSU.

4. Defendant Kent D. Miller, Ph.D. ("Miller") is the Chairperson of MSU's Department of Management and, upon information and belief, resides in East Lansing, Michigan.

5. Plaintiff brings this action pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 USC 2000e *et seq.*, Michigan's Elliott-Larsen Civil Rights Act, MCL 37.2101, *et seq.*, 42 USC Section 1981 (against Miller only), and 42 USC Section 1983 (against Miller only).

6. Defendant MSU was plaintiff's employer, and plaintiff was its employee, as defined by Title VII, ADEA, and the Elliott-Larsen Civil Rights Act.

7. This Court has federal question jurisdiction over plaintiff's federal claims under 28 USC 1331 because this action arises under the laws of the United States.

8. This Court has supplemental jurisdiction over plaintiff's state law claims under 28 USC 1367(a).

2

9. Venue is proper under 28 USC 1391(a)(2), (b)(1) and (b)(2) because all the defendants reside in this district and the unlawful actions giving rise to the claims occurred within the Western District of Michigan.

## GENERAL ALLEGATIONS

10. Plaintiff is an Asian woman, born in Uganda, and of Indian descent and ethnicity.

11. MSU hired plaintiff in or about August 2015 as a full-time fixed-term Assistant Professor to teach in the Management Department at MSU's Eli Broad College of Business ("COB").

12. Specifically, plaintiff was hired to teach in the Management, Strategy and Leadership Program ("MSL"), which is a Master's Program that is part of the Management Department.

13. The MSL is considered one of the most prestigious programs in the Management Department, and is typically assigned to faculty members, like plaintiff, who have extensive teaching experience.

14. At the time of plaintiff's hiring, her employment contract was for a full academic year (9 months), and included 100% appointment and pay.

15. In 2015, when MSU hired plaintiff, the Chairperson of the Management Department was Bob Wiseman ("Wiseman").

16. Upon Dr. Wiseman's promotion, Don Conlon ("Conlon") became the new Chairperson of the Management Department.

17. Conlon was hostile towards the plaintiff, who was the only person of color in the MSL, and one of the few people of color in the Management Department.

18. In addition to being hostile to plaintiff, Conlon reduced the number of credit hours plaintiff taught, which resulted in a reduction of her pay.

19. Plaintiff also observed that Conlon exhibited favoritism towards the American-Born, White faculty.

20. In or about August 2021, MSU promoted defendant Miller to replace Conlon as Chairperson of the Management Department.

21. At that time, Miller became plaintiff's direct supervisor.

22. Miller also became responsible for evaluating all faculty in the Management Department, determining whether faculty should receive annual raises and how much those raises should be, and also whether fixed-term faculty should have their contracts extended.

23. Throughout her employment, plaintiff was an excellent professor with strong performance in the classroom, and a great service record.

### *Miller's continued hostility and discrimination towards plaintiff*

24. At all relevant times, plaintiff was the only Asian faculty member in the MSL.

25. Shortly after defendant Miller took over as Chairperson of the Management Department, plaintiff noticed that Miller continued to treat White, American-born faculty better than Asian or foreign-born faculty.

26. Miller would give preferential treatment to non-Asian faculty members, and recommend they receive better teaching assignments and pay.

27. Despite plaintiff's excellent performance, Miller was openly hostile to plaintiff and denied plaintiff the same benefits as her non-Asian colleague.

28. Miller continued the racially-hostile working environment that was initiated by Conlon, the previous chair.

29. For instance, Miller ostracized plaintiff and refused to provide her with an office key so she could access to the main office or use the faculty lounge.

30. Plaintiff was the only faculty member in the department who was prevented from accessing these areas.

31. Miller was regularly disrespectful towards plaintiff and dismissive of plaintiff during faculty meetings.

32. During those same faculty meetings, Miller treated all the American-born, White faculty members with respect.

33. Miller refused to let plaintiff use the faculty coffee machine.

34. Miller refused to give plaintiff an office, even though all other faculty members in the department had one.

35. Miller appointed the American-born, White faculty at higher and more favorable appointment percentages, the included higher credit hour loads than he had given plaintiff.

36. Despite her strong performance, Miller gave plaintiff unwarranted performance criticisms.

***When plaintiff complained to Miller that he was discriminating against her, Miller retaliated against plaintiff by reducing her pay, and then terminated her***

37. On or about September 1, 2021, plaintiff complained to Miller that he was treating her worse than he treated her colleagues due to her race and ethnicity.

38. Plaintiff also asked Miller why her appointment had been reduced from 100% to 62%, while all American-born White faculty members were paid at a higher appointment percentage.

39. Miller told plaintiff it was because she was not a good fit for the department, even though plaintiff had excellent performance.

40. Shortly thereafter, Miller retaliated against plaintiff even further by reducing her pay by nearly 50% for the 2023 school year.

41. He accomplished this by cutting the courses plaintiff taught.

42. Miller had previously assured plaintiff that he would not reduce her appointment status because he said, "great faculty who can teach online courses are hard to find."

43. When plaintiff complained again that the reduction in her pay was retaliation for her complaints of discrimination and unequal treatment due to her race and ethnicity, Miller fired her on or about July 14, 2022.

44. After MSU fired plaintiff, MSU hired additional faculty to replace plaintiff and to teach the courses she had taught.

**COUNT I (as to MSU and Trustees only)**

**RACE/ETHNICITY DISCRIMINATION  
IN VIOLATION OF TITLE VII**

45. Plaintiff incorporates the preceding paragraphs by reference.

46. On or about September 22, 2022, plaintiff filed a charge of discrimination with the U.S. Equal Employment Opportunity Commission alleging violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 USC 2000e et seq.

47. Plaintiff received her Notice of Right to Sue letter from the U.S. Department of Justice on or about March 27, 2024, permitting plaintiff to commence a civil action for the alleged violations of Title VII within 90 days of the date of that letter.

48. Title VII makes it unlawful for an employer to discriminate against employees on the basis of race or ethnicity.

49. Title VII also makes it unlawful for an employer to retaliate against employees who complain of race or ethnicity discrimination.

50. At all relevant times, plaintiff was an employee and defendants MSU and Trustees were her employers covered by and within the meaning of Title VII.

51. Defendants MSU and Trustees' treatment of plaintiff was based, at least in part, on unlawful consideration of her race and/or ethnicity.

52. Defendants MSU and Trustees, by their agents, were predisposed to discriminate on the basis of race and/or ethnicity and acted in accordance with that predisposition.

53. Plaintiff engaged in activity protected by Title VII when she complained of discrimination.

54. Defendants MSU and Trustees' treatment of plaintiff is in violation of the anti-retaliation provisions of Title VII.

55. The actions of defendants and their agents were deliberate and intentional, and engaged in with malice, or with reckless indifference to the rights and sensibilities of plaintiff.

56. As a direct and proximate result of defendants' wrongful and discriminatory treatment of plaintiffs, plaintiff has suffered injuries and damages, including but not limited to, loss of past, present and future earnings and earning capacity; loss of the value of fringe and pension benefits; mental and emotional distress, including anxiety and mental anguish, humiliation and embarrassment; and the loss of the ordinary pleasures of everyday life.

## COUNT II

## RACE/ETHNICITY DISCRIMINATION
## IN VIOLATION OF THE ELLIOTT-LARSEN CIVIL RIGHTS ACT

57. Plaintiff incorporates the preceding paragraphs by reference.

58. Defendants discriminated against plaintiff with respect to the terms, conditions, and privileges of employment due to plaintiff's race and ethnicity.

59. Defendants were predisposed to discriminate against plaintiff based on her race and ethnicity, and favored White, American-born faculty members over plaintiff.

60. Plaintiff's race and/or ethnicity was a factor in defendants' decision to pay plaintiff less compensation and to constructively discharge her.

61. Defendants' discrimination adversely affected plaintiff's compensation, terms, conditions, and privileges of employment in violation of the Elliott-Larsen Civil Rights Act, MCL 37.2101, *et seq*.

62. As a direct and proximate result of defendants' conduct, plaintiff has suffered and will continue to suffer lost compensation, emotional distress, and other incidental and consequential damages, including attorney fees.

## COUNT III (as to Miller only)

## RACE DISCRIMINATION IN VIOLATION
## OF THE CIVIL RIGHTS ACT OF 1866

63. Plaintiff incorporates the preceding paragraphs by reference.

9

64. Section 1981 of the Civil Rights Act of 1866 prohibits discrimination on the basis of race, color, and ethnicity when making and enforcing contracts.

65. Section 1981 specifically grants all individuals within the United States the same rights and benefits as "enjoyed by white citizens" regarding contractual relationships.

66. Defendant Miller deprived plaintiff of the same right to make and enforce contracts when he treated plaintiff differently, discriminated against her, paid her less, refused to promote her, and terminated her on the basis of her race.

67. Defendant Miller was predisposed to discriminate against plaintiff on the basis of her race and acted in accordance with that predisposition.

68. The discriminatory practices at issue were intentional and willful, and engaged in with malice or with reckless indifference to the rights and sensibilities of plaintiff.

69. As a direct and proximate result of those actions, the terms, conditions and privileges of plaintiff's employment were adversely affected and she was terminated.

## COUNT IV (as to Miller only)

### DISCRIMINATION IN VIOLATION OF THE CIVIL RIGHTS ACT OF 1871

70. Plaintiff incorporates the preceding paragraphs by reference.

71. Plaintiff is a "citizen" within the meaning of The Civil Rights Act of 1871, 42 USC 1983.

72. Defendant Miller is a "person" within the meaning of Section 1983.

73. Defendant Miller is being sued in his individual capacity.

74. At all relevant times, defendant Miller was acting under "color of law."

75. By discriminating against plaintiff due to her race, and/or ethnicity, defendant Miller caused plaintiff to be deprived of rights, privileges, and/or immunities secured by the Constitution and federal laws.

76. The rights at issue in this lawsuit were clearly established at the time of defendant Miller's unlawful conduct.

77. The discriminatory practices at issue were intentional and willful, and engaged in with malice or with reckless indifference to the rights and sensibilities of plaintiff.

78. As a direct and proximate result of the defendant Miller's wrongful and discriminatory treatment of plaintiff, plaintiff has suffered injuries and damages, including, but not limited to, loss of past, present and future earnings and earning capacity; loss of the value of fringe and pension benefits; mental and emotional distress, including anxiety and mental anguish; humiliation and embarrassment; and loss of the ordinary pleasures of everyday life, including the right to seek and pursue gainful occupation of choice.

WHEREFORE, plaintiff respectfully requests that this Honorable Court enter judgment against defendants, in whatever amount plaintiff is found to be entitled, together with punitive damages, equitable relief, interest as an element of damages, statutory interest, and attorney fees and costs.

## JURY DEMAND

Plaintiff Rozmina A. Jaffer, Ph.D., by her attorneys Sterling Attorneys at Law, P.C., demands a trial by jury.

>Respectfully submitted,
>
>STERLING ATTORNEYS AT LAW, P.C.
>
>By: /s/Brian J. Farrar
>Brian J. Farrar (P79404)
>Attorneys for Plaintiffs
>33 Bloomfield Hills Pkwy., Ste. 250
>Bloomfield Hills, MI 48304
>(248) 644-1500

Dated: June 19, 2024